The final case on our calendar for argument this morning is No. 20-1560, United States v. Greene. Good morning, Your Honors. May it please the Court. My argument today will just focus on our point one, in that the District Court erred when it did not find that the defendant did not receive effective assistance of counsel. When the defense counsel's opening statement is more harmful to the defendant's case than the government's opening statement, defense counsel's conduct undermines the proper functioning of the adversarial process. Without knowing whether the government would call David Hodge to testify, the defense counsel claimed in the opening statement that Hodge had testified before the grand jury, that the defendant had visited Hodge five days prior to the controlled delivery of the package of cocaine to Hodge's residence, that Hodge was worried about whether the package contained something illegal, that Hodge and the defendant went to the post office to pick up the package, and that a few days after their arrest, the defendant visited Hodge and told him that as long as they kept their story straight, they would be fine. The government introduced none of these claims during their direct case, and although the District Court correctly admonished the jury that comments of counsel are not evidence, still consider that these are the first words that the jury has heard in the defense of the defendant, and these comments do not put the defendant in a negative light. But when you combine the damage caused by the opening statement with the several serious and egregious errors committed by defense counsel during the trial, the defendant was denied effective assistance of counsel. Now the District Court erred by ruling that the two prongs of Strickland were met by defense counsel. However, when you, as I said before, combine these factors, when you look at defense counsel's failure to move to redact portions of the post arrest video, consider that before the trial even began, the District Court expressed its misgivings over the government's desire to offer evidence of the defendant's 10-year-old crack distribution conviction. The District Court said, quote, if the defendant didn't open the door to the government's need to put this in, I wouldn't even think about it. I'd keep it all out, unquote. But look, I get your point that this case certainly was not tried to the queen's taste. But if you look at the evidence against your client, I mean, it's awfully strong. He was caught red handed. Well, Your Honor, I beg to differ. And that would go to the second prong of Strickland. And if I can go there for a moment, when you consider the evidence that was allowed in, and I shouldn't say allowed, but defense counsel failed to object to, for example, the defendant's prior conviction. The opinion testimony of Agent Turner, where he was allowed to testify that the defendant, Hodge, and the individual who was in the 510 area code were involved in the drug conspiracy together, and they might be relatives. Well, these are opinions that are not based upon facts and based upon, I believe, the Mejia case that I cited, they would never have been allowed into evidence. Just more generally, though, on a Rule 33, you're contesting the District Court's decision on the Rule 33 motion and making your ineffective assistance claim in that context, right? That's correct. Yeah. And so we do, we have abusive discretion with you, of Judge Bilardo's ruling, and he may vacate a judgment if the interest of justice so requires. He reviewed the evidence, he sat through the trial, he saw all of the kind of evidence that Judge Parker was just referring to, that establishes, seems to establish your client's guilt. I'm having difficulty really looking at the second prong of Strickland and looking at Judge Bilardo's very careful analysis and finding any abusive discretion. What would you highlight individually, or how could you frame that to convince me that it is an abusive discretion with the interest of justice here required in your trial? Yes, Judge. Consider that, what this case started as. There was a, law enforcement unexpectedly came across packages that were delivered to the Postal Service. One package was addressed to Hodge. A second package that was never delivered was to a W. Green at a location that was a high-rise apartment that had 138 apartments, and that also had ties to both Hodge and admittedly to the defendant as well. The delivery was made. The defendant wasn't there. Law enforcement had no idea that the defendant would be present at this delivery. Go ahead, Judge Ratchey. We understand the facts of the case. The bottom line, though, is that Judge Bilardo thought that counsel had a tough row to hoe and that there was really no other plausible defense other than to blame Hodge. And that's what he did. And to that extent, you know, it's very hard to argue ineffective assistance when it's a strategic decision here by counsel. So I think that's what we're all trying to get you to focus on is how do you satisfy the second prong of Strickland here? Very well, Judge. I would submit to the court that while people can differ over trial strategy, the way defense counsel presented his defense did not require him to bring up all these statements that Hodge would have said. You could very easily, and after being a trial counsel for as many years as I have been, there are many ways that you can deflect, you can talk about reasonable doubt without having to put in all these other factors about Hodge. You can leave it very general. In fact, the cross-examination of Agent Turner… I think we're having a little internet difficulty here. I'm sorry. You can make the same arguments without having to bring Hodge into this. The cross-examination of Agent Turner concerning Hodge was completely unnecessary because you can make those same arguments later on. But in addition, Judge, the inclusion of the defendant's prior conviction, that in and of itself we contend should cause reversible error and that there's really no curative instruction that can be given. And we did cite Figueroa and Rinaldi as to those positions. The jury also heard that the first package was delivered. Yes. And very shortly after, your client shows up and takes possession of a package sent from California involving cocaine. I mean, how much additional damage is the fact that he had a prior conviction going to inflict? Your Honor, don't forget that the package remained unopened when the defendant received it and then it was stopped by police, that there was no testimony about any kind of telephone contacts, texts or otherwise, after the delivery of the package, and that during the defendant's post-arrest interview, he never acknowledged that he knew what was inside of the package. Those are certainly valid arguments, but you know as well as anyone that these jurors are encouraged just to use their sort of common sense and common judgment. Certainly. And it, you know, arguably is not a great leap finder that he had some involvement in the receipt of the package and therefore he knew what was in it. As a judge, I would submit that the leap from receiving the package to knowing what's in it is a large leap when we're talking about proof beyond reasonable doubt. I know my time's about up. My question, or at least my final statement to you all is, if you take out all of the irrelevant, inadmissible testimony, what you are left with is, could a person be convicted? No. Yes, I mean, but is there any kind of guarantee? Is the strength of the case that strong if you take out these matters? And I submit to you, no. And therefore, the second... Again, I'm not hearing. Yeah, we have an unstable internet connection, I think, Mr. Green. Well, I'm used to instability for myself, Judge, but that's a whole nother issue. What I'm saying, what I'm just saying is that if you remove the offending material, if you will, this is not such a strong case. This is a case where the jury could have found him not guilty just as well as it could have found him guilty. And based upon that, I believe we've met the second prong of Shiklin and that the district court erred by denying our motion. Thank you very much, Mr. Green. Very well. We'll hear from the government. May it please the court. Monica Richards on behalf of the United States. I believe that starting with the argument regarding ineffective assistance of counsel isn't quite what we need to do here because it's the sufficiency of the evidence, as this court noted in questioning of my colleague. The evidence here was more than sufficient with regard to the guilt of Appellant Green. Appellant Green was indeed caught red handed. There was a package delivered to Mr. Hodge's address and then Mr. Green pulled up and Mr. Hodge gave the package to Mr. Green. That wasn't expected or known or anticipated by law enforcement. They didn't have their eye on either of these gentlemen before this. But when that happened and they pulled him over, yes, they caught him red handed with the package of cocaine, sham cocaine by that point in his vehicle. The second thing that happened then is another package came. Another package was in the mail already at that point and was addressed to a Green, somebody by surname Green, at Mr. Green's residence. So just that evidence right there is sufficient in terms of what was going on here. But what also happened was the searches of Mr. Green's phones. There were two phones and those indicated additional evidence that Mr. Green was not just somebody who would be holding the package for Mr. Hodge, but was somebody who was involved in the transfer, in the arrangements that were made for the deliveries, and that he also was trying to be surreptitious about it. There are indications in his text messages about whether or not they should be using the same phone, whether or not they should be speaking in code, whether or not they should be more careful about what they were saying in the messages that were being exchanged on text with the person believed to have been sending the packages from California. So all of that evidence was indeed sufficient, was indeed overwhelming, such that when we get to the second argument made regarding... Let me ask you this. Do you think there was anything that trial counsel did that fell below an objective standard of reasonableness? No, I liked the way Your Honor put it. Frankly, it wasn't perfect. It wasn't exactly the way everybody might have tried this case. But no, there were mistakes made, perhaps in retrospect, but it is not something that fell below an objective standard of reasonableness. There was a reason why those references were made to Mr. Hodge during opening. As I said in my brief, it was because he was indeed listed on the government's potential witness list, but he wasn't listed with a specific date or time, and that was raised immediately by the government after the opening argument to indicate that the government wasn't calling Mr. Green... I'm sorry, Mr. Hodge. I'm sorry. And so defense counsel adjusted. If you read his closing argument, his closing argument is replete with references to where was Mr. Hodge and blaming the government. The government didn't respect you enough not to call Mr. Hodge. He was a liar. His criminal history... His criminal history included controlled substances, over 30 arrests, 20 convictions. He was a felon. I mean, that's all... I'm not verbatim quoting, but it's all in the closing arguments. So that the adjustment was made really well, frankly, to what happened during the opening. And again, there was the judge's instruction that opening arguments and statements of counsel are not evidence. But what did come into evidence... Sorry, Your Honor. Well, I just wanted to say, the closing counsel may have adjusted very well, but nonetheless, when the opening statement is so heavily inculpatory of the defendant, as it strikes me that this one was, it's a little hard not to look at the closing and to look at the evidence presented at trial without having that mindset already established. And I wonder about the power of a district court's instruction to the jury to cure that, obviously a strategic move, but what turned out to be mistaken in some ways, even if that was the only defense that was available really is to point the finger at Hodge.  Except that, Your Honor, if I could, what counsel was doing in terms of the strategic choice was he was putting in front of the jury in the beginning, the evidence. The evidence that was damaging or that was... I can't say the word, inculpating, inculpatory of his client. And in doing so, that was the evidence presented. The evidence did come in that they went to the post office. The evidence did come in that Mr. Hodge had an extensive criminal history. The evidence did come in that he testified before the grand jury. The case agent said, yeah, but he was a liar. He was inconsistent. That was all evidence that was presented. And all that the opening was doing was trying to get ahead of that. So, and that's a strategic decision, as Your Honor noted. That's something both sides do. Try to put out there in your opening the things that the jury is going to hear so it doesn't seem like you're hiding anything. Let me ask you this. I'm not quite clear of this from my review of the record. Why was... Why the trial started before defense counsel knew that the government wasn't calling him? And wasn't calling Hodge? I can point, Your Honor, only to the exchange that occurred after the opening. I'm not sure if I'm going to be able to pull the pages in the record up fast enough with this preference, but it's in the... Immediately after the openings, the government advised that having heard the opening statement, it was concerned that the defendant, defense counsel thought that the government was in fact calling Hodge. He was on the witness list, right? But he was on the potential witness list. He was on the list differently. Other people on the list had a specific name. I'm sorry, a specific date and intention indicated by how the list was filled in. So he was on the potential list. There's all sorts of people on that list, including record keepers, things to which there might be stipulations that would avoid the need to call people. But the government, well, both parties have to put on their witness list people who they may call. And so I take that back. The government, in this case, has to put on the witness list the potential people who they may call. So it's potential. If we called the record keeper without having listed them, we would have been in trouble that way, for example. And same thing, frankly, I think that, again, all that happened with that opening was that he was trying to get ahead of the things that Mr. Hodge, who could have been particularly damaging to him, but wasn't called, could have said. And those things were all matters of evidence, points of evidence that were indeed put through in the government's case. What about the prior conviction? Yeah, the prior conviction, too. I think, again, the strategic choice there was worked to his advantage in reviewing, again, reviewing the closing argument in particular. When asked about the, it came in two ways. And when asked, it was once during the videotape statement that was given after his arrest, and then also... Oh, strike that, I'm sorry. It was just during that moment. But when it had been... I'm sorry, that's what I was trying to remember. It had been a discussion prior to trial beginning, whether or not that was going to come in, something that would be put forth. But what ended up happening, yeah, as the judge said, I'm going to wait and see how it plays out. And how it played out was that then Mr. Green's attorney elicited the information that Mr. Hodge had a lot of prior convictions, a lot of prior arrests. And that came in. So it was, in terms of what happened again in the closing, it was a good, it was a sound strategic decision that by entering a stipulation to the single arrest, made him look like somebody who, compared to the other guy, who wasn't sitting there, wasn't in a chair, being tried with him, he didn't look so bad. And so that, again, with regard to whether or not that would have made a difference in this case, ultimately, I think as Your Honor pointed out, Judge Parker, during questioning of my opponent, there was all this other stuff that was presented in terms of the defendant's guilt, and whether or not he had a prior conviction really didn't add to the quantum of proof, let alone the fact that the jury was instructed that his prior conviction shouldn't be considered by them in the judge's closings. So unless there's further questions, I would just wrap up by saying that I believe that the burden of proof here is tough for the defendant, and he can't meet it. Because just looking at the prejudice prong of Strickland's ineffective assistance of counsel test, that requires a showing of manifest injustice. And here we had overwhelming proof and evidence of this defendant's guilt. He was caught red-handed, and that's a very difficult burden, and he cannot overcome it on this appeal. Thank you very much. We have the arguments. We'll take the matter under advisement. That concludes our oral arguments for this morning. We have one case on submission, number 203887, Clark v. Schroeder, and we'll also defer division on that. The clerk will please adjourn court. Court stands adjourned.